**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ADONIS SAMAEL UMANZOR FUENTES, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY; <br><br> MARKWAYNE MULLIN, in his official capacity as Secretary of Department of Homeland Security; <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; <br><br> DAVID J. VENTURELLA, in his official capacity as the Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; <br><br> ROBERT L. CERNA, in his official capacity as Acting Director of the U.S. Immigration and Customs Enforcement Dallas Field Office; <br><br> THOMAS BERGAMI, in his official capacity as Warden of Prairieland Detention Center; <br><br> LASALLE CORRECTIONS, <br><br> Defendants. | Civil Action No. 26-cv-2216 |

**COMPLAINT**

**INTRODUCTION**

1.     All immigrants in the United States are entitled to effective communication and meaningful access to the Government's programs and activities, including detention.

2.     Plaintiff Adonis Umanzor Fuentes ("Mr. Umanzor Fuentes"), a deaf immigrant, cannot read, write, or speak in any language. Instead, he relies on gestures and home signs[1] in attempt to communicate with others.

3.     In June 2025, Mr. Umanzor Fuentes was transferred to Prairieland Detention Center ("Prairieland").[2]

4.     Defendants have been on notice since June 16, 2025, of Mr. Umanzor Fuentes' disability and his need for appropriate auxiliary aids and services through their interactions with him, and communications from his family and his counsel.

5.     Defendants failed to follow their policies regarding disability accommodations, including the requirements to assess Mr. Umanzor Fuentes through an interactive process, to give primary consideration to his requested auxiliary aids, and to provide auxiliary aids to ensure effective communication.

6.     As a result of Defendants' refusal to provide a qualified Certified Deaf Interpreter ("CDI")/Hearing Interpreter ("HI") team, with culturally competent

---

[1] Joseph C. Hill, Diane C. Lillo-Martin & Sandra K. Wood, Sign Languages: Structures and Contexts 118-19 (2019) (defining home signs as "gestural components of a self-generated linguistic system for communication by Deaf children who have no or little accessible exposure to another existing language, signed or spoken.").
[2] Mr. Umanzor Fuentes filed a Petition for Writ of Habeas Corpus on May 22, 2026. That petition is pending before Judge Karen Gren Scholer.

1

experience in visual-gestural communication, picture boards and gestures, and vibrating and visual alert systems (hereinafter, "Communication Aids and Services"), and access to a videophone[3] and video calls at no cost, Mr. Umanzor Fuentes cannot ask for help, ask questions, or receive information in a way that he can understand.

7.  Because Mr. Umanzor Fuentes has no way to effectively communicate with Defendants or meaningfully access their programs and activities at Prairieland, he is deprived of any meaningful human interaction and is unable to participate in immigration processes.

8.  Mr. Umanzor Fuentes's attempts to resolve this issue have led nowhere. Defendants have offered ineffective auxiliary aids, such as American Sign Language ("ASL") interpreters, that do not allow him to effectively communicate with Defendants. Defendants have also ignored any efforts to establish discussions on how his communication needs can be met as required by law.

9.  With the ongoing and continuing failure of Defendants to provide auxiliary aids for Mr. Umanzor Fuentes, he brings this action to vindicate his rights to effective communication and meaningful access to Defendants' programs and activities and to compel Defendants to provide Communication Aids and Services and access to a videophone and video calls at no cost for him at Prairieland.

---

[3] A videophone is a device that allows for bi-directional video and audio transmissions between individuals in real time. The videophone allows a deaf individual to connect with another deaf individual in real-time or communicate with a hearing individual over the telephone via a relay interpreter

10. Mr. Umanzor Fuentes' inability to effectively communicate with Defendants at Prairieland is an irreparable harm that cannot be remedied by money damages.

**PARTIES**

11. Plaintiff Adonis Umanzor Fuentes is a 28-year-old deaf citizen and national of Honduras. He cannot read, write, or speak in any language. Mr. Umanzor Fuentes relies on gestures and home signs in an attempt to communicate with others. He is currently detained at Prairieland Detention Center in Alvarado, Texas.

12. Defendant United States Department of Homeland Security ("DHS") is a Department within the Executive Branch tasked with enforcing the immigration laws of the United States.

13. Defendant Markwayne Mullin is the Acting Director of DHS. He is sued in his official capacity.

14. Defendant United States Immigration and Customs Enforcement ("ICE") is a component of DHS. As the federal law enforcement agency under DHS, ICE is charged with the enforcement of immigration laws, including the detention of noncitizens in the United States.

15. Defendant David Venturella is the Senior Official Performing the Duties of the Director of ICE. He is sued in his official capacity.

16. Defendant Robert Cerna is the Acting Director of the ICE Dallas Field Office. He is sued in his official capacity.

17. Defendant Thomas Bergami is the Warden of Prairieland Detention Center and manages the daily operations of Prairieland. He is sued in his official capacity.

18. Defendant LaSalle Corrections is a private for-profit company that operates Prairieland Detention Center under contract with DHS-ICE and the City of Alvarado, Texas.

## JURISDICTION

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 because this matter arises under federal law.

20. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202, and 5 U.S.C. § 702.

21. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) and (e). Defendants reside in Texas. Further, a substantial part of Defendants' unlawful conduct giving rise to Plaintiff's claims occurred in this district.

## STATEMENT OF FACTS

**Mr. Umanzor Fuentes Has Lived His Entire Life in Linguistic Isolation**

22. A person who is prelingually deaf (the onset of hearing loss occurs before age three) often faces profound and insurmountable challenges in acquiring language. Mr. Umanzor Fuentes is one of those people.

23. Many deaf individuals experience varying degrees of language deprivation, or a chronic lack of full access to a natural language during the critical period of language acquisition.

24. Due to such language deprivation, some deaf individuals never gain proficiency in any language. These people have been defined by various terms, including

4

being linguistically incompetent, having language deprivation syndrome, or possessing minimal language skills.

25.    Individuals who have minimal language skills often communicate using tidbits of their majority language (e.g., ASL) and systems of gesture (e.g., home signs).

26.    Mr. Umanzor Fuentes is a rare and tragic case of someone with minimal language skills.

27.    Mr. Umanzor Fuentes is deaf. Throughout his life, he has lacked meaningful exposure to any form of language. His family does not speak, sign, or write with him, and in his limited educational experiences, he received no language instruction or support.

28.    Mr. Umanzor Fuentes does not speak, read, or write in any language. He does not know ASL, or any other established sign languages. He uses gestures and home signs in attempt to communicate with his family.

29.    Mr. Umanzor Fuentes requires a qualified CDI/HI team, with culturally competent experience in visual-gestural communication, picture boards and gestures, and vibrating and visual alert systems, and access to a videophone and video calls at no cost for meaningful access and equal opportunity to participate in Defendants' programs and activities.

**Defendants Knew Plaintiff Is Deaf but Failed to Provide Auxiliary Aids**

30.    On June 12, 2025, Mr. Umanzor Fuentes had an interview with an immigration officer. The immigration officer noted that Mr. Umanzor Fuentes was deaf. *See* Ex. A, Form I-213 (June 12, 2025), at 8.

5

31.     Upon information and belief, on the same day, Mr. Umanzor Fuentes was transferred to Prairieland.

32.     On June 16, 2025, Nurse Govea issued a Disability Accommodation Notification ("DAN") for Mr. Umanzor Fuentes, which stated that Mr. Umanzor Fuentes did not know any sign language and used simple gestures to communicate. *See* Ex. B, Disability Accommodation Notification (June 16, 2025), at 1.

33.     On July 14, 2025, Immigration Judge ("IJ") Margaret MacGregor with the Port Isabel Immigration Court ordered DHS to assist the court in figuring out how to effectively communicate with Mr. Umanzor Fuentes.

34.     On July 30, 2025, IJ MacGregor found that DHS failed to provide information to the court on how they had established effective communication for Mr. Umanzor Fuentes.

35.     On September 17, 2025, Yovanna Vargas, then-counsel for Mr. Umanzor Fuentes, filed for termination of the removal proceedings based on Mr. Umanzor Fuentes's inability to communicate. The motion was denied.

36.     On October 17, 2025, Ms. Vargas emailed the Dallas Field Office Outreach email address regarding the need for accommodations for her client. *See* Ex. C, Emails from Yovanna Vargas to Defendants, at 1-2. Ms. Vargas also requested the contact information for her client's Deportation Officer overseeing Mr. Umanzor Fuentes's case. *Id.* at 1-2. She only received an automated response informing her the email had been received. *Id.* at 9.

37.     On October 17, 2025, Ms. Vargas also emailed Prairieland directly to inform the facility of her client's need for accommodations and asked for contact information for her client's Deportation Officer. *Id.* at 14-15. Kaela Anderson, a Programs Manager with LaSalle Corrections responded to her email, stating that "We are not ICE. We do not have direct contact with ICE and do not have any access to help with the detainee's case." *Id.* at 14. Ms. Vargas replied to Ms. Anderson's email stating the Immigration Judge specifically told her to contact Prairieland directly regarding her client's need for accommodation and reiterated her request for contact information for the Deportation Officer, or some other representative. *Id.* at 12. She received no response. *Id.* at 28.

38.     On October 20, 2026, Ms. Vargas sent an email to opposing counsel in Mr. Umanzor Fuentes' immigration case, Kevin Camacho, asking for contact information for her client's Deportation Officer. *Id.* at 17. She received no response. *Id.* at 27-28.

39.     On February 12, 2026, Ms. Vargas sent an email to the Dallas Duty Attorney email address, again, requesting that her client receive accommodations for his disability. *Id.* at 23. She received no response. *Id.* at 28. She also emailed the Dallas Field Office Outreach email address, again, requesting accommodations for her client. *Id.* at 18. She only received the automated response. *Id.* at 28.

40.     On May 14, 2026, Disability Law United and the Texas A&M University School of Law Legal Clinic's Immigration Detention Project sent a letter via U.S. Certified Mail to Robert Cerna, the Warden at Prairieland, and LaSalle Corrections alleging violations of Mr. Umanzor Fuentes' rights under the Rehabilitation Act. *See* Ex. D, Letter from Disability Law United and Texas A&M University School of Law Legal Clinic's

Immigration Detention Project to the Warden at Prairieland, Robert Cerna (the Dallas ICE Field Office Director), and LaSalle Corrections (May 14, 2026), at 1-3. That letter also demanded that immediate action be taken to provide Mr. Umanzor Fuentes with auxiliary aids to ensure effective communication and meaningful access to Defendants' programs and activities. *Id.* at 2-3. As of the filing of this complaint, Plaintiff's counsel has not received a response from either ICE or LaSalle Corrections.

41.    On May 28, 2026, undersigned counsel emailed Federal Defendants' counsel, Assistant United States Attorney, Brian Stolz, related to Mr. Umanzor Fuentes' habeas petition, which was filed with this court on May 14, 2026. In the email, Defendants were notified, among other things, that Mr. Umanzor Fuentes is deaf and had not received accommodations at Prairieland.

**A Lack of Effective Communication Means Mr. Umanzor Fuentes is Isolated and Unable to Access any Programs or Services in Detention**

42.    The lack of auxiliary aids and services for Mr. Umanzor Fuentes means he cannot effectively communicate with staff or fellow detainees at Prairieland. He cannot ask for help, ask questions, or receive answers in a way that he understands.

43.    Defendants have the means to provide Mr. Umanzor Fuentes with access.

44.    Prairieland has a videophone for deaf detainees. Upon information and belief, Defendants have not trained Mr. Umanzor Fuentes on how to use the videophone, nor has Mr. Umanzor Fuentes been given access to the videophone; thus, he cannot communicate with his family or counsel through the technology installed for that very purpose.

45.     Even with the limited access received, Mr. Umanzor Fuentes faces additional burdens that his nondisabled peers do not. Hearing detainees can pay for voice or video calls. Upon information and belief, Defendants charge a higher rate for video calls. Because of his profound deafness, Mr. Umanzor Fuentes cannot access the voice calls, thus, he must pay for video calls. Alternatively, he must schedule video conferencing calls in advance and accept whatever time constraints Defendants impose.[4] Mr. Umanzor Fuentes thus is not provided an opportunity to participate in Defendants' programs and activities that is equal to other nondisabled detainees.

46.     The lack of auxiliary aids and services and the restrictions on his contact with the outside world means that Mr. Umanzor Fuentes has no meaningful interaction. The result is a "prison within a prison," or confinement that is compounded by total linguistic isolation.

47.     The lack of auxiliary aids and services also means that Mr. Umanzor Fuentes cannot access any programs, services or activities within detention. For example, he is unable to effectively communicate to receive medical care, make any requests for any needs that arise from daily living inside of a detention center, or understand instructions and directions given to him by detention staff, which risks him being viewed as noncompliant, and therefore unfairly subjected to punishment simply because of a communication issue outside of his control.

---

[4] The video calls that Defendants charge detainees to use does not occur via a videophone.

9

48.     Defendants' failure to provide auxiliary aids and services is not an isolated incident. Members of Congress have twice written to the Secretary of Homeland Security regarding Defendants' failure to provide deaf detainees (and detainees with disabilities) with appropriate auxiliary aids and services required by the Rehabilitation Act and its own regulations. *See* Ex. E, Letter from Congress to Secretary of Department of Homeland Security (Aug. 1, 2025); *see also* Ex. F, Letter from Congress to Secretary of Department of Homeland Security (Feb. 2, 2026).

**Defendants Failed to Comply with the National Detention Standards**

49.     Defendant ICE's policies—specifically, its National Detention Standards ("NDS")—require Defendants to identify, inform, assess, and accommodate detainees with disabilities, including Mr. Umanzor Fuentes. *See* Ex. G, National Detention Standards (2026), Section 4.7 Disability Identification, Assessment, and Accommodation, at 144-152.

50.     The NDS directs Defendants to act affirmatively to prevent disability discrimination by ensuring that "detainees with disabilities have an equal opportunity . . . to participate in the facility's programs, services, and activities." *Id.* at 144. The NDS specifically states that the facility "are required" to comply with the requirements of Section 504 of the Rehabilitation Act. *Id.* Further, under ICE Directive 6000, detention facilities must provide auxiliary aids and services for detainees with "impaired sensory, manual, or speaking skills" to ensure effective communication so they have "an equal opportunity to participate in, and enjoy the benefits of, programs and activities." Ex. H, ICE Directive 6000, Assessment and Accommodations for Detainees with Disabilities (Feb. 26, 2025),

at 2. Such auxiliary aids and services include, but are not limited to, "interpreters, written materials, note-takers, video remote interpreting services or other effective methods of making aurally delivered materials (i.e. perceived through hearing) available to detainees with hearing impairments." *Id.; see also* Ex. G at 145.

51.     Defendants, to their credit, identified Mr. Umanzor Fuentes as deaf. The immigration officer noted that he is deaf on his I-213. *See* Ex. A, at 8. Nurse Govea issued a DAN documenting that Mr. Umanzor Fuentes did not know sign language and used simple gestures to communicate. *See* Ex. B, at 1. Despite this notification, Mr. Umanzor Fuentes has never been provided an appropriate auxiliary aid or service or reasonable modifications.

52.     Since Defendants knew of Mr. Umanzor Fuentes' disability, they were required to affirmatively inform him of his right to request "disability accommodations"[5] and engage in an "individualized[ and] case-by-case assessment" that considers Mr. Umanzor Fuentes's needs. Ex. G at 146, 149-50.

53.     Defendants were also required to consider information submitted by a third party, "such as an attorney . . . regarding a detainee with a disability or need for [an] accommodation." *Id.* at 147. Defendants received numerous notifications from Mr.

---

[5] The Detention Standards define "disability accommodations" as "any accommodation (provision of auxiliary aids or services) and any modification to detention facility policy, practice, or procedure" necessary for a detainee with a disability to "participate in the facility's programs, services, activities, or requirements, or to enjoy the benefits and privileges of detention programs equal to those enjoyed by detainees without disabilities." Ex. G at 145.

Umanzor Fuentes' former and current counsel about his disability and his need for auxiliary aids. *See supra* ¶¶ 34-39.

54.     Upon information and belief, Defendants did not conduct the required individualized assessment (interactive process) despite needing to provide accommodations to Mr. Umanzor Fuentes "in an expeditious manner." Ex. G at 148.

55.     The NDS requires that Defendants provide effective communication for the disabled detainee at "all stages of the disability accommodation process and throughout its programs and activities." *Id.*

56.     Upon information and belief, Mr. Umanzor Fuentes did not receive effective communication and meaningful access for the disability accommodation process.

57.     The NDS requires Defendants to give primary consideration to the detainee's request when determining the appropriate auxiliary aid or service. *Id.* at 148. Mr. Umanzor Fuentes, through counsel, requested appropriate auxiliary aids, including a qualified CDI/HI team. *See* Ex. D at 2.

58.     Upon information and belief, Defendants did not provide primary consideration to Mr. Umanzor Fuentes' request for a qualified CDI/HI team.

59.     Upon information and belief, despite identifying Mr. Umanzor Fuentes as a disabled detainee, Defendants have not engaged in an interactive process nor provided the appropriate auxiliary aids or reasonable modifications to ensure that Mr. Umanzor Fuentes receives effective communication or equal opportunity to access to their programs and activities. Defendants have and continue to deny Mr. Umanzor Fuentes auxiliary aids and services and reasonable modifications.

60.     Mr. Umanzor Fuentes is harmed by Defendants' failure to provide a qualified CDI/HI team with culturally competent experience in visual-gestural communication, picture boards, visual aids, and vibrating/visual alert systems because he cannot ask for help, ask questions, or receive information in a way that he can understand.

61.     Mr. Umanzor Fuentes is further harmed by Defendants' failure to provide access to a videophone and video calls at no cost because he is denied an equal opportunity to participate in Defendants' programs and activities by reason of his disability.

62.     ICE Directive 6000 provides that if the requested auxiliary aids and services cannot be provided to the detainee with a disability that "[c]onsistent with requirements of mandatory detention, public safety, and other immigration enforcement considerations, *release from custody*" is permitted. Ex. H at 9 (emphasis added).

63.     Defendants' actions constitute an ongoing and continuing violation of Section 504 of the Rehabilitation Act and the Administrative Procedure Act ("APA") and deny him meaningful access to fully participate in Defendants' programs and activities.

**COUNT ONE**
**Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**
**(Declaratory and Injunctive Relief Against All Defendants)**

64.     Plaintiff repeats and incorporates by reference each allegation of the prior paragraphs as if fully set forth herein.

65.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to the discrimination under any program or activity receiving Federal financial

13

assistance or under any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a).

66.    Section 504 requires the head of every agency to promulgate regulations as shall be necessary to carry out the Rehabilitation Act.

67.    Defendant DHS is an "Executive agency" within the meaning of 29 U.S.C. § 794(a) and subject to the nondiscrimination requirements of Section 504. *See* 7 Op. O.L.C. 110, 110, 114 (1983) ("The Term 'Executive agency' as used in [Section 504] must be construed broadly to include all government entities which are not within either the legislative or judicial branches.").

68.    DHS regulations implementing the Rehabilitation Act apply to DHS Components. *See* 6 C.F.R. § 15.1.

69.    ICE is a federal law enforcement agency under DHS, thus it is a DHS Component subject to the DHS' nondiscrimination regulations implementing Section 504 in addition to being directly subject to Section 504 nondiscrimination requirements as an executive agency. *See id*.

70.    As a DHS component, ICE manages and oversees civil immigration in detention facilities nationwide that house noncitizens.

71.    DHS' Section 504 regulations provide that "[n]o qualified individual with a disability in the United States, shall, by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity conducted by the Department." *Id.* § 15.30.

14

72. The statute and applicable regulations define an "individual with a disability" (recodified and synonymous language for "handicap") as an individual who has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102); *see also* 6 C.F.R. § 15.3(d).

73. Deafness is a disability pursuant to 29 U.S.C. § 705(21)(A)(iii) and is a physical impairment that substantially limits the major life activity of hearing. 6 C.F.R. § 15.3(d)(1)(ii).

74. Plaintiff is deaf, which substantially limits his hearing; thus, he is an individual with a disability.

75. To be qualified, an individual must "meet the essential eligibility requirements for participation in, or receipt of benefits from, that program or activity." *Id.* § 15.3(e)(2).

76. Plaintiff is qualified to participate in or receive benefits from ICE because he is currently detained at Prairieland Detention Center, a facility at which ICE has contracted with LaSalle Corrections to run daily operations and programs.

77. DHS defines "program or activity" to cover anything a federal agency does. *See* Megan H. Mack, U.S. Dep't of Homeland Sec. Guide 065-01-001-01, Component Self-Evaluation & Planning Reference Guide (2016) at 23 (explaining that "a federally conducted program or activity is anything a federal agency does," including "enforcement of immigration laws and operation of immigrant detention facilities."

15

78.     As entities with programs and activities that receive or benefit from federal financial assistance distributed by DHS or conducted by DHS, Defendants must comply with the requirements of Section 504. *See* 29 U.S.C. § 794; 6 C.F.R. § 15.1; U.S. Dep't of Homeland Sec. Directive 065-01, Nondiscrimination for Individuals with Disabilities in DHS-Conducted Programs and Activities (Non-Employment) (Sept. 25, 2013); U.S. Dep't of Homeland Sec. Instruction 065-01-001, Nondiscrimination for Individuals with Disabilities in DHS-Conducted Programs and Activities (Non-Employment) (Mar. 7, 2015).

79.     DHS's regulations codifying prohibitions against discrimination prohibit Defendants, in providing any aid, benefit, or service, "directly or through contractual, licensing, or other arrangements, [from discrimination] on the basis of disability," from:

a.      "Deny[ing] a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service," 6 C.F.R. § 15.30(b)(1)(i);

b.      "Afford[ing] a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service," *id.* § 15.30(b)(1)(ii);

c.      "Provid[ing] a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others," *id.* § 15.30(b)(1)(iii); and

d.  "Otherwise limit[ing] a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service," *id.* § 15.30(b)(1)(vi).

80.  DHS's regulations codifying prohibitions against discrimination also require Defendants to "take appropriate steps to effectively communicate with . . . participants," including:

e.  "[F]urnish[ing] appropriate auxiliary aids where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the Department," *id.* § 15.60(a)(1);

f.  "[G]iv[ing] primary consideration to the requests of the individual with a disability" when it comes to "determining what type of auxiliary aid is necessary," *id.* § 15.60(a)(1)(i); and

g.  "[M]ak[ing] available to interested persons, including persons with impaired vision or hearing, information as to the existence and location of accessible services, activities, and facilities." *Id.* § 15.60(a)(b).

81.  In failing to take appropriate steps to provide effective communication for Mr. Umanzor Fuentes, Defendants have refused to provide him with auxiliary aids and services necessary to communicate with him in an equally effective and timely manner.

82.  Further, in refusing to provide access to a videophone or video calls at no cost, Defendants have provided Mr. Umanzor Fuentes with an opportunity that is not equal to other nondisabled detainees at Prairieland.

83.     As a result of Defendants' acts and omissions, Plaintiff is excluded from participation in, denied the opportunity to participate in or benefit from, and denied the full benefits of Defendants' immigration services.

84.     As a result of Defendants' acts and omissions, Plaintiff has suffered and continues to suffer irreparable harm; he suffers from discrimination and unequal access to Defendants' immigration services for which he has no adequate remedy at law.

**COUNT TWO**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 706**
**(Actions Contrary to Law)**
**(Against Defendant ICE and Defendant Venturella)**

85.     Plaintiff repeats and incorporates by reference each allegation of the prior paragraphs as if fully set forth herein.

86.     DHS is an agency within the meaning of the APA. 5 U.S.C. § 551. Defendant ICE is overseen by the Department of Homeland Security whose actions are subject to judicial review under the Administrative Procedure Act. 5 U.S.C. § 701, 704. Defendants are all proper defendants subject to APA review. 5 U.S.C. § 702.

87.     Review of agency action for compliance with a federal statute is available under the APA, even where the statute lacks a right of action. *Chrysler Corp. v. Brown*, 441 U.S. 281, 317-19 (1979).

88.     Under the APA, a court "shall" "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

89.     Defendants' refusal to provide Plaintiff appropriate auxiliary aids and resulting effective communication constitutes final agency action reviewable under 5 U.S.C. § 704.

90.     As described in Count One, Defendants' actions are contrary to law and in excess of statutory authority.

## COUNT THREE
### Violation of the Administrative Procedure Act, 5 U.S.C. § 706
#### (Arbitrary and Capricious Actions)
#### (Against Defendant ICE and Defendant Venturella)

91.     Plaintiff repeats and incorporates by reference each allegation of the prior paragraphs as if fully set forth herein.

92.     Under the APA, a reviewing agency must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (citation omitted). At minimum, the agency must have considered relevant facts and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986) (citation omitted).

93.     Defendants' refusal to provide Plaintiff appropriate auxiliary aids and resulting effective communication constitutes final agency action reviewable under 5 U.S.C. § 704.

19

94.     Defendants' refusal to provide auxiliary aids, including a qualified CDI/HI team with culturally competent experience in visual-gestural communication, picture boards, visual aids, and vibrating/visual alert systems, or access to the videophone and video calls at no cost is "arbitrary" and "capricious," in two ways. 5 U.S.C. § 706(2)(A).

95.     First, Defendants failed to consider the facts. Defendants' records (Form I-213 and the Disability Accommodation Notification) documented that Mr. Umanzor Fuentes is deaf and needed auxiliary aids for effective communication. *See supra* ¶¶ 29-30, 49.

96.     Second, Defendants' refusal to comply with the NDS and ICE Directive 6000 is arbitrary and capricious because there is no rational explanation for the choices that Defendants made in ignoring numerous requests on Mr. Umanzor Fuentes' behalf for auxiliary aids and services and reasonable modifications as described above.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendants and that the Court grant the following:

A. A temporary restraining order and thereafter a preliminary injunction requiring Defendants to provide a qualified CDI/HI team with culturally competent  experience in visual-gestural communication, picture boards, visual aids, and vibrating/visual alert systems for Plaintiff's detention at Prairieland;

B. Declaratory relief that Defendants have violated the Rehabilitation Act and the Administrative Procedure Act by failing to provide a qualified

CDI/HI team with culturally competent experience in visual-gestural communication, picture boards, visual aids, and vibrating/visual alert systems for its immigration services, access to the videophone, or video calls at no cost;

C. Permanent injunctive relief requiring Defendants to provide a qualified CDI/HI team with culturally competent experience in visual-gestural communication, picture boards, visual aids, and vibrating/visual alert systems, access to a videophone and video calls at no cost for Plaintiff throughout his detention at Prairieland;

D. Release from custody if Defendants are unable to provide the accommodations as permitted by Defendants' policies;

E. Retain jurisdiction over this action to ensure Defendants' compliance with the mandates of Section 504 of the Rehabilitation Act and the Administrative Procedures Act;

F. Award Plaintiff reasonable attorneys' fees and costs; and

G. Award such other relief as this Court deems just.

21

Dated: July 2, 2026

Respectfully submitted,

/s/ *Sara Zampierin*_____
Sara Zampierin (24132896)
Zainab Khan (24102011)
TEXAS A&M SCHOOL OF LAW
LEGAL CLINIC
1515 Commerce Street
Fort Worth, TX 76102
Telephone: (817) 212-4123
Facsimile: (817) 212-4124
sara.zampierin@law.tamu.edu
zainab_khan@tamu.edu

Laura Murchie*
DISABILITY LAW UNITED
1905 Sherman Street, Suite 200, #1282
Denver, CO 80203
Telephone: (404) 912-5234
Facsimile: (720) 680-0711
lmurchie@dlunited.org

Brittany Shrader*
Drake W. Darrah*
NATIONAL ASSOCIATION OF THE DEAF
LAW AND ADVOCACY CENTER
8630 Fenton Street, Suite 202
Silver Spring, MD 20910
Telephone: (240) 748-1711
Facsimile: (301) 587-1791
brittany.shrader@nad.org
drake.darrah@nad.org

*pro hac vice forthcoming*

** Plaintiffs in this case are represented by clinics operated by Texas A&M University School of Law, but this document does not purport to present the school's institutional views, if any.

*Counsel for Plaintiff*

22