IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ADONIS SAMAEL UMANZOR FUENTES,<br><br>        Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in his official capacity as Secretary of Department of Homeland Security; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, in his official capacity as the Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; ROBERT L. CERNA, in his official capacity as Acting Director of the U.S. Immigration and Customs Enforcement Dallas Field Office; THOMAS BERGAMI, in his official capacity as Warden of Prairieland Detention Center; LASALLE CORRECTIONS,<br><br>        Defendants. | Civil Action No. 3:26-cv-2216-K-BW |

**FEDERAL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A TRO OR PRELIMINARY INJUNCTION**

RYAN RAYBOULD
UNITED STATES ATTORNEY

*/s/ Tami C. Parker*
Tami C. Parker
Assistant United States Attorney
Texas Bar No. 24003946
801 Cherry Street, Suite 1700, Unit #4
Fort Worth, Texas 76102
Telephone:  817-252-5200
Facsimile:  817-252-5458

E-mail: tami.parker@usdoj.gov

*Attorneys for Federal Defendants\**

*\* This response is filed on behalf of the Federal Defendants DHS, ICE, and Markwayne Mullin, David Venturella, and Robert Cerna in their official capacities.  The U.S. Attorney's Office does not represent private party defendants LaSalle Corrections and Thomas Bergami.*

**Table of Contents**

I.   Background..............................................................................................7

    A.   Fuentes files a federal lawsuit .........................................................9

    B.   Fuentes files the instant motion for preliminary injunction. ........................9

II.  Legal Standards .......................................................................................10

    A.   Temporary restraining order...........................................................10

    B.   Preliminary injunction..................................................................10

    C.   The Rehabilitation Act .................................................................11

    D.   The Administrative Procedures Act ..................................................13

III. Argument and Authorities ...........................................................................13

    A.   Fuentes's motion for a TRO/PI should be denied because he seeks essentially the same relief he demands in the complaint. ...........................13

    B.   Fuentes's motion for a preliminary injunction should be denied because he cannot demonstrate a substantial likelihood of success on the merits. .....................................................................................14

        1.   Fuentes cannot demonstrate a likelihood of success because there is no private right of action in this context for a Rehabilitation Act claim......................................................14

        2.   Even if Fuentes could bring a Rehabilitation Act claim, he cannot demonstrate that Defendants failed to accommodate his disability. ......................................................................16

        3.   Fuentes is not likely to succeed on the merits of an APA claim. ............................................................................18

    C.   Plaintiff will not suffer irreparable harm absent a preliminary injunction.................................................................................19

    D.   Equities and public interest do not weigh in favor of a preliminary injunction.................................................................................21

E.      Release from detention is not a proper remedy for any alleged
        violation of the Rehabilitation Act or the APA...........................................21

IV.   Conclusion...................................................................................................22

**Table of Authorities**

**Cases**

*Aamer v. Obama*,
   742 F.3d 1023 (D.C. Cir. 2014) ............................................................................... 5

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ................................................................................................. 9

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
   878 F.2d 806 (5th Cir. 1989) ................................................................................... 6

*Am. Council of the Blind v. Paulson* ,
   525 F.3d 1256  (D.C. Cir. 2008) ............................................................................ 12

*Arce v. Louisiana*,
   226 F. Supp. 3d 643 (E.D. La. 2016) ..................................................................... 11

*Ball v. LeBlanc*,
   792 F.3d 584 (5th Cir. 2015) ................................................................................... 7

*Bax v. Drs. Med. Ctr. of Modesto, Inc.*,
   52 F.4th 858 (9th Cir. 2022) .............................................................................. 11, 12

*Bellikoff v. Eaton Vance Corp.*,
   481 F.3d 110 (2d Cir. 2007) .................................................................................... 9

*Bennett–Nelson v. Louisiana Board of Regents*,
   431 F.3d 448 (5th Cir. 2005) ................................................................................ 6, 7

*Cadena v. El Paso County*,
   946 F.3d 717 (5th Cir. 2020) ................................................................................... 8

*De Dandrade v. U.S. Dep't of Homeland Sec.*,
   367 F. Supp. 3d 174 (S.D.N.Y. 2019) .................................................................. 9, 10

*E.B. v. Dep't of State*,
   422 F. Supp. 3d 81 (D.D.C. 2019) ......................................................................... 15

*EEOC v. Agro Distrib.*,
   555 F.3d 462 (5th Cir. 2009) ................................................................................. 11

*Fraihat v. U.S. Immigr. & Customs Enf't,*
16 F. 4th 613 (9th Cir. 2021) ................................................................... 12

*Garrett v. Thaler,*
560 F. App'x 375 (5th Cir. 2014) ............................................................. 11

*Hurtado v. Reno,*
34 F. Supp. 2d 1261 (D. Colo. 1999) ........................................................ 10

*InkoTariah v. Lappin,*
2009 WL 8652932 (E.D.N.C. Apr. 1, 2009) ............................................. 10

*InkoTariah v. Lappin,*
aff'd 346 F. App'x 915 (Cir. 2009) ........................................................... 10

*Lackey v. Stinnie,*
604 U.S. 192 (2025) ............................................................................... 6, 8

*Lightbourn v. County of El Paso, Tex.,*
118 F.3d 421 (5th Cir. 1997) ...................................................................... 6

*Mathis v. GEO Group, Inc.,*
2009 WL 10736631 (E.D.N.C. Nov. 9, 2009) ........................................... 10

*Mayfield v. City of Mesa,*
131 F.4th 1100 (9th Cir. 2025) ................................................................. 11

*Mazurek v. Armstrong,*
520 U.S. 968 (1997) .................................................................................... 5

*Mexichem Specialty Resins, Inc. v. EPA,*
787 F.3d 544 (D.C. Cir. 2015) ................................................................. 14

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
760 F.2d 618 (5th Cir. 1985) ...................................................................... 5

*Norton v Southern Utah Wilderness Alliance,*
542 U.S. 55 (2004) ...................................................................................... 8

*Roark v. Flanery,*
2014 WL 4447451 (E.D. Tex. Sept. 9, 2014) ............................................ 10

*Sandler v. Anderson,*
2008 WL 2610130 (W.D. Mo. July 2, 2008) ............................................. 10

*Shanks v. City of Dallas, Texas*,
   752 F.2d 1092 (5th Cir. 1985) ................................................................................ 8

*Singh v. Carter*,
   185 F. Supp. 3d 11 (D.D.C. 2016) ........................................................................ 14

*Smith v. Harris Cty., Texas*,
   No. 19-20194, 2020 WL 1873205 (5th Cir. Apr. 15, 2020) ................................. 7

*Tennessee v. Lane*,
   541 U.S. 509 (2004) ............................................................................................... 7

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ............................................................................................. 15

*Wells v. Thaler*,
   460 F. App'x 303 (5th Cir. 2012) ........................................................................ 11

*Williams v. Meese*,
   926 F.2d 994 (10th Cir. 1991) ............................................................................. 10

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ........................................................................................... passim

**Statutes**

29 U.S.C. § 794a (a)(2) ................................................................................... 4, 6, 9

29 U.S.C. § 794(a) ................................................................................................ 12

42 U.S.C. §§ 12131-12165 ..................................................................................... 6

5 U.S.C. § 702 ......................................................................................................... 8

5 U.S.C. § 706 ......................................................................................................... 4

5 U.S.C. § 701 ......................................................................................................... 8

5 U.S.C. § 706(1) .................................................................................................... 8

**Regulations**

28 C.F.R. § 35.130(b)(7) ......................................................................................... 7

## Introduction

Plaintiff Adonis Samael Umanzor Fuentes, an immigrant from Honduras pending removal from the United States, seeks a temporary restraining order and preliminary injunction against the Federal Defendants. Fuentes, who is deaf, complains that he is being denied "effective communication in violation of Section 504 of the Rehabilitation Act and the Administrative Procedures Act." (Doc. 4 at 1). He files the instant preliminary injunction demanding as relief an order directing the Federal Defendants to provide a "qualified [Certified Deaf Interpreter/Hearing Interpreter] team with culturally competent experience in a visual-gestural communication, picture boards, visual aids, and vibrating/visual alert systems, access to the videophone and video calls at no cost, and engage in an interactive process with [him] to ensure that he has effective communication at Prairieland."  (*Id*. at 10.)

Fuentes's motion should be denied. As set forth herein, the allegations in Fuentes's motion are inaccurate or misleading, omit relevant facts, and are otherwise unsupported. Moreover, his motion seeks essentially the same relief sought in the complaint, which is not proper in the context of a TRO or PI. And in any event, Fuentes cannot demonstrate a substantial likelihood of success on the merits on a Rehabilitation Act claim because the evidence demonstrates that Defendants are reasonably accommodating his disability. For that same reason, Fuentes cannot demonstrate irreparable injury should this Court deny the motion for a preliminary injunction, nor can he show that the balance of equities and public interest weigh in his favor.  For these reasons and more, Fuentes cannot satisfy any  of  the  rigorous requirements for

obtaining a preliminary injunction.

## I.   Background[1]

Fuentes arrived at the Prairieland Detention Center (a private detention facility operated under contract with the government) in June of 2025. (Doc. 1 at 1; *see also* App'x at 1.[2]) Fuentes's hearing impairment was immediately identified and accommodations approved, to include communication aids and services, an interpreter, and video services. (Doc. 6 at 37-40.) Prairieland staff decided to keep him in the medical unit until accommodations to address his communication limitations could be made. (App'x at 1, 5.) An interpreter was then used to assist in the initial screening intake (App'x at 4), and Fuentes was provided with a table with access to VRS/Purple Application, a software program specifically designed for people without hearing. (App'x at 7.)  Fuentes was also provided with a communication board.  (*Id*.)

Fuentes' medical records reflect that notwithstanding his profound communication limitations, he was able to effectively communicate with Prairieland staff utilizing his own communication methods (gesturing) and the accommodations provided by Prairieland. For example, the records that reflect to a month after his arrival at Prairieland, Fuentes presented at sick call and communicated that he had a sore throat. (App'x at 14.) This complaint was addressed. (*Id*.) Fuentes presented to sick call with

---

[1] Doe to time constraints, this Background section is truncated.  The facts are taken from Fuentes' complaint and pleadings supporting his request for a TRO/PI, without admitting the truth of those statements to the extent they are not supported by documentation here.

[2] Because his is deaf and illiterate, Defendants initially believed Fuente's name was Jader Gomez Rodas. The medical records reflect that incorrect name.

various other complaints. He reported with complaints of acne, which were addressed. (App'x at 17-19, 21-22.) He reported with complaints of flu-like symptoms, which were addressed. (App'x at 24-26, 34-36.)  Notes from that visit reflect that Fuentes was offered the assistance of an interpreter, but he declined that assistance. (App'x at 26.) Fuentes reported to sick call with complaints of left shoulder injury received while playing soccer (i.e. soccer at Prairieland), which were addressed. (App'x at 27-33.) He reported that the facility was cold but verified that he had blankets and a sweatshirt. (App'x at 45.) Fuentes reported to sick call with symptoms of indigestion, which were addressed. (App'x at 47-50.) The records reflect that Fuentes was generally able to directly communicate his needs with staff, and that interpreters were offered (App'x at 26) or utilized (App'x at 45, 63) where appropriate. Staff made other accommodations, such as marking medicine packets with a sun or moon to indicate morning and evening dosing. (App'x at 56.)

Fuentes's medical records also reflect that Prairieland staff took affirmative steps to ensure he was able to communicate with friends and family. As previously noted, staff ensured that Fuentes had a tablet with software designed for people with hearing impairments. (App'x at 6.) Staff specifically inquired about his contact with family and Fuentes indicated that he used his tablet for communication, a fact that was verified by his fellow detainees. (App'x at 44.) A month after he arrived at the facility, medical staff noted that although Fuentes had a communication board, he still preferred to use gestures and the assistance of fellow detainees. (*Id*. at 15.) Those fellow detainees reported to medical staff that Fuentes was doing well and appeared to understand the daily routines of the facility. (*Id*.)

**Federal Defendants' Memorandum in Opposition to Plaintiff's Motion for
a Temporary Restraining Order of Preliminary Injunction – Page 8**

The records further reflect that Fuentes availed himself of opportunities made available to all detainees, such as recreational time where he played soccer, and the commissary. (App'x at 88-98.)

## A.    Fuentes files a federal lawsuit

On July 2, 2026, Fuentes filed a federal complaint. (Doc. 1.) The complaint alleges a single count of disability discrimination under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, against all defendants (Doc. 1 at 14-19), and two counts alleging violation of the Administrative Procedure Act, 5 U.S.C. § 706, against Defendant ICE and Defendant Venturella.  (Doc. 1 at 19-20.) As relief, Fuentes demands that Defendants be ordered to provide him with "a qualified CDH/HI team with culturally competent experience in visual-gestural communication, picture boards, visual aids, and vibrating/visual alert systems, and access to a videophone and video calls at no cost." (Doc. 1 at 20-21.)

## B.    Fuentes files the instant motion for preliminary injunction.

On the same day that Fuentes filed his complaint, he also filed the instant motion for a temporary restraining order and preliminary injunction. (Docs. 4, 5.)  The motion raises the same factual allegations alleged in the complaint, namely that Federal Defendants have failed to provide Fuentes with "appropriate auxiliary aides and services or reasonable modifications required by Section 504 of the Rehabilitation Act of 1973." (Doc. 5 at 6.) It seeks essentially the same relief demanded in the complaint, namely that Defendants be compelled "to provide a Certified Deaf Interpreter/Hearing Interpreter team with culturally competent experience in visual-gestural communication, picture

**Federal Defendants' Memorandum in Opposition to Plaintiff's Motion for**
**a Temporary Restraining Order of Preliminary Injunction – Page 9**

boards, visual aids, and vibrating/visual alert systems[] and access to a videophone and video calls at no costs." (*Id*. at 1-2) Thus, the measures Fuentes seeks in this motion are affirmative and would provide nearly all the relief he seeks in this lawsuit.

## II.      Legal Standards

### A.      Temporary restraining order

A temporary restraining order serves to preserve the status quo at the timing the lawsuit was filed and prevent irreparable harm to the movant so a court can "render a meaningful decision after a trial on the merits." To warrant the extraordinary relief of a TRO, the movant must demonstrate: (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.

### B.      Preliminary injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). To justify this "drastic remedy," a plaintiff must make a "*clear showing*" that (1) they have a substantial likelihood of success on the merits; (2) they will suffer irreparable harm without the requested injunction; (3) the balance of equities tips in their favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The "most important factor" is whether the movant has "established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir.

2014). That said, failure to demonstrate any one of these elements requires denial of preliminary relief. *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

Preliminary injunctions [] do not conclusively resolve legal disputes." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). Rather, as noted above, "courts determine if a plaintiff is *likely* to succeed on the merits—along with the risk of irreparable harm, the balance of equities, and the public interest. *Id*. (citing in *Winter v. Natural Resources Defense Council*, 555 U.S., 7, 20 (2008) (emphasis in the original). Because such relief is "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," the Supreme Court has "cautioned against improperly equating 'likelihood of success' with 'succuss' and treating preliminary injunctions as tantamount to decisions on the underlying merits." *Id*., at 201-02 (cleaned up).

## C.    The Rehabilitation Act

Section 504 of the Rehabilitation Act "provides that no otherwise qualified handicapped individual in the United States shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal Financial Assistance." 29 U.S.C. § 794 (a); *see also Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997). The Fifth Circuit has held that claims under Title II of the ADA and claims under § 504 of the Rehabilitation Act be treated identically from a jurisprudential standpoint. *Bennett–Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454–55 (5th

**Federal Defendants' Memorandum in Opposition to Plaintiff's Motion for**
**a Temporary Restraining Order of Preliminary Injunction – Page 11**

Cir. 2005). To make out a prima facie case under Title II or the Rehabilitation Act, a plaintiff must show "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020) (citation omitted).

The ADA and the Rehabilitation Act also "impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Smith v. Harris Cty., Texas*, No. 19-20194, 2020 WL 1873205, at *4 (5th Cir. Apr. 15, 2020) (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005); also citing *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (observing that "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion")). An accommodation is reasonable if "it does not impose undue financial or administrative burdens or 'fundamentally alter the nature of the service, program or activity.' " *Smith*, 2020 WL 1873205, at *4 (quoting *Cadena*, 946 F.3d at 724; *see also* 28 C.F.R. § 35.130(b)(7))). "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith*, 2020 WL 1873205, at *4 (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)).

**D.    The Administrative Procedures Act**

The APA waives sovereign immunity concerning non-monetary claims made against federal agencies. 5 U.S.C. § 702. The APA provides a reviewing court jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed." 5 USC § 706(1). But jurisdiction doesn't exist for review of "agency action [that] is committed to agency discretion by law." 5 USC § 701. This means that federal courts are only empowered "to compel an agency to perform a ministerial or non-discretionary act." *Norton v Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). This in turn means that, for jurisdiction to exist over a plaintiff's § 706(1) claim, the plaintiff must sufficiently allege that "an agency failed to take a discrete agency action that it is required to take." *Id*.

### III.    Argument and Authorities

Fuentes cannot demonstrate that he is entitled to the drastic relief of a TRO or preliminary injunction against the Federal Defendants.

**A.    Fuentes's motion for a TRO/PI should be denied because he seeks essentially the same relief he demands in the complaint.**

A preliminary injunction and/or temporary restraining order is typically granted, pending trial on the merits, to prevent irreparable injury that may result before a dispositive trial. *Shanks v. City of Dallas, Texas*, 752 F.2d 1092, 1096 (5th Cir. 1985). Preliminary relief should "not conclusively resolve legal disputes[,]" and thus a TRO is an inappropriate vehicle for granting ultimate relief. *Lackey v. Stinnie*, 604 U.S. at 200. Here, Fuentes seeks the same relief in his complaint (Doc. 1) as he seeks through the

**Federal Defendants' Memorandum in Opposition to Plaintiff's Motion for a Temporary Restraining Order of Preliminary Injunction – Page 13**

instant motion for a TRO/PI. (Doc. 4.) This is not an appropriate use of a TRO/PI. The records do not support Fuentes's argument that he is experiencing "extreme isolation," and relief, if any, is not appropriate thought a truncated TRO/PI proceedings.

**B.      Fuentes's motion for a preliminary injunction should be denied because he cannot demonstrate a substantial likelihood of success on the merits.**

Plaintiff brings claims under Section 504 of the Rehabilitation Act and alleges that Defendants have failed to provide reasonable accommodations for his disabilities and have excluded him from federal programs or activities because of his disabilities. He seeks either improved conditions or release from custody. But relief from custody is available only through habeas, and Fuentes is not otherwise likely to succeed on his claims.

**1.      Fuentes cannot demonstrate a likelihood of success because there is no private right of action in this context for a Rehabilitation Act claim.**

As an initial matter, the Rehabilitation Act's remedies section does not provide for a private right of action for Plaintiff. *See* 29 U.S.C. § 794a (a)(2) (providing causes of action only to those aggrieved by an action of a recipient of federal assistance or a federal provider of assistance); *see also De Dandrade v. U.S. Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 190–91 (S.D.N.Y. 2019). "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Where there is no express private right, courts "begin with the presumption that Congress did not intend one." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007). Here, where the Rehabilitation Act expressly provides for causes of action and remedies for certain aggrieved persons but not for those aggrieved by Executive agencies, "there is

**Federal Defendants' Memorandum in Opposition to Plaintiff's Motion for a Temporary Restraining Order of Preliminary Injunction – Page 14**

strong indication that Congress did not intend for a private remedy to accompany the right to be free from discrimination from any Executive agency." *De Dandrade*, 367 F. Supp. 3d at 192. If Plaintiff has a cause of action here, it would be implied only. *See Mathis v. GEO Group, Inc.*, 2009 WL 10736631, at *6 (E.D.N.C. Nov. 9, 2009) (analyzing in depth the availability of a Rehabilitation Act claim by a federal detainee against his detention center).

Though Defendants are unaware of a Fifth Circuit ruling on the issue, courts across the country—including a court in this Circuit—have held that federal detainees may not bring Rehabilitation Act claims against the federal agencies housing them. *See, e.g., Roark v. Flanery*, 2014 WL 4447451, at *27 (E.D. Tex. Sept. 9, 2014) ("[T]he Bureau of Prisons does not fit within the definition of 'programs or activities' governed by § 794(a)."); *Hurtado v. Reno*, 34 F. Supp. 2d 1261, 1264 (D. Colo. 1999) (holding that an immigration detainee could not bring a Rehabilitation Act claim against INS, the predecessor to ICE); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (holding that Rehabilitation Act does not apply to federal prisons); *InkoTariah v. Lappin*, 2009 WL 8652932, at *1 (E.D.N.C. Apr. 1, 2009), aff'd, 346 F. App'x 915 (4th Cir. 2009) ("Upon a thorough review of cases interpreting the application of the Rehabilitation Act, the court concludes that the Act does not provide a cause of action for inmates in federal prisons."); *Sandler v. Anderson*, 2008 WL 2610130, at *2 (W.D. Mo. July 2, 2008) ("[T]he Rehabilitation Act does not apply to federal inmates.").

**2.      Even if Fuentes could bring a Rehabilitation Act claim, he cannot demonstrate that Defendants failed to accommodate his disability.**

Defendants do not dispute that a public entity's failure to make reasonable modifications or accommodations may constitute denial of services. *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014). But "[t]he ADA provides for reasonable accommodation, not preferred accommodation." *Arce v. Louisiana*, 226 F. Supp. 3d 643, 651 (E.D. La. 2016) (citing *EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)). The accommodation of an inmate's disability need not be ideal; instead, it need only be reasonable and effective. *Id*. (citations omitted). Further, courts generally afford detention settings deference in determining the appropriate accommodations. *See Wells v. Thaler*, 460 F. App'x 303, 313 (5th Cir. 2012) ("[O]ur conclusion that the provided auxiliary aids and services are sufficient is informed by the context of this suit—a correctional facility—and we accord the officials at the Estelle Unit deference in their determination of an appropriate accommodation.").

Courts do not "apply categorical rules to determine which auxiliary aids are required to achieve effective communication." *Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 52 F.4th 858, 870 (9th Cir. 2022).  And there is "no per se obligation" to provide a disabled person's requested accommodation. *Mayfield v. City of Mesa*, 131 F.4th 1100, 1110 (9th Cir. 2025).  "Assessing whether an entity provided appropriate auxiliary aids where necessary to afford effective communication is a fact-intensive exercise.  The trier of fact must weigh several factors, including the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the

**Federal Defendants' Memorandum in Opposition to Plaintiff's Motion for
a Temporary Restraining Order of Preliminary Injunction – Page 16**

context in which the communication is taking place." *Id*. "[T]he test is whether an individual has received an auxiliary aid sufficient to prevent any 'real hindrance' in [his] ability to exchange information." *Id*. (quoting *Bax*, 52 F.4th at 867). In *Mayfield*, Ninth Circuit held that a deaf drunk driver was able to "effectively communicate" with the arresting officer "in all material respects" despite being denied any ASL interpreter. *Id*. at 1111. In that case, a police officer communicated with the deaf driver through written instructions, and through some lip-reading on the deaf driver's part, "even if" her understanding of the officer's instructions "was only partial." *Id*. Similarly, in *Bax*, the Court concluded that a hospital did not deprive deaf patients of effective communication about their medical care, even though it had, at times, denied their requests for an ASL interpreter. 52 F.4th at 869–70. In that case, hospital staff communicated with the deaf patient "by writing notes," even for important matters such as "to convey his diabetes diagnosis, conduct patient education sessions, and discuss post-operative care." *Id*. at 864.

Here, Fuentes fails to demonstrate a likelihood of success on his claim that the Federal Defendants have not reasonably accommodated his disabilities. Fuentes has not alleged sufficient facts demonstrating that he has been excluded from, denied the benefit of, or subject to discrimination under a program or activity. *See Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008). Section 504 of the Rehabilitation Act states in relevant part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance."  29 U.S.C. § 794(a); *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F. 4th 613, 650 (9th Cir. 2021). Instead, Fuentes claims, broadly and without any factual support, that he has been denied the benefit of a program or activity because of his disability. Instead, he argues that his inability to communicate, in particular his ability to communicate, has not been accomodated. But the records do not support these claims. Instead, the records reflect that Fuentes has been provided with a variety of measures specifically designed to facility communication.  For example, he has been provided with a tablet with appropriate software, a communication board, the assistance of ASL interpreters, etc.  Additionally, Fuentes has failed to allege any facts that he has been treated differently by reason of his alleged disabilities.  He does not set forth which detention center activities or programs in which he has not been able to participate, nor explain what accommodations would allow him to participate in those programs.  Indeed, the very evidence submitted by Fuentes suggests that the unfortunate nature of his childhood likely renders him unable to participate in any programming even with the accommodations he demands through his complaint.

**3.    Fuentes is not likely to succeed on the merits of an APA claim.**

Fuentes alleges that he is likely to succeed on his claims under the APA because Defendants have, allegedly, failed to provide him with communication aids and services, or other reasonable modifications. (Doc. 5 at 14.) Specifically, Fuentes claims that Prairieland staff failed to act in conformity with the detention standards promulgated by ICE, which required that detention staff identify detainees with impairments, provide necessary accommodations in an expeditious manner, and reassess the detainee's needs

within 30 days, and then every 90 days, (Doc. 5 at 14-16.) Because ICE did not respond to counsel's inquiries, the motion posits that the necessary steps were not undertaken. (*Id.* at 17.)

Fuentes is wrong.  The records reflect that Fuentes' disability was immediately recognized by Prairieland staff. (App'x at 1.) Steps were then taken to accommodate that disability, to include setting up a tablet with a sign language application (App'x at 1-2), utilizing the services of an interpreter, and providing Fuentes with a communication board that utilized pictures. (App'x at 7.) All of the above occurred with his first week at Prairieland. (App'x 1-7.)  A wellness check was made within 30 days of the above, with medical staff noting that Fuentes had his communication board, still preferred to gesture, and was otherwise doing well. (App'x at 15.)

Fuentes does not get to choose the precise accommodation he desires.  The records reflect that his disability is being accommodated, and thus Fuentes cannot demonstrate that the Federal defendants failed to take a discrete agency action that it is required to take. As such, he is not likely to succeed on the merits of a APA claim.

## C.      Plaintiff will not suffer irreparable harm absent a preliminary injunction.

Plaintiff cannot demonstrate that he will suffer irreparable injury absent the injunctive relief they seek. A plaintiff must show "that irreparable injury is likely in the absence of an injunction." *Singh v. Carter*, 185 F. Supp. 3d 11, 20 (D.D.C. 2016) (quoting *Winter*, 555 U.S. at 22).  To be considered "irreparable," a plaintiff must show that absent granting the preliminary relief, the injury will be "both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a

**Federal Defendants' Memorandum in Opposition to Plaintiff's Motion for**
**a Temporary Restraining Order of Preliminary Injunction – Page 19**

clear and present need for equitable relief to prevent irreparable harm." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (internal quotations omitted). The significance of the alleged harm is also relevant to a court's determination of whether to grant injunctive relief. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982); *E.B. v. Dep't of State*, 422 F. Supp. 3d 81, 88 (D.D.C. 2019) ("the Court cannot ignore that 'some concept of magnitude of injury is implicit in the [preliminary injunction] standards.'"). Merely showing a "possibility" of irreparable harm is insufficient and is "inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Here, as a threshold matter, Plaintiff's request for a preliminary injunction lacks urgency. Plaintiff filed his complaint on July 2, 2026, but the evidence filed in support of the motion contains an expert opinions dated November 17, 2025 (Doc. 6 at 6-21), a letter dated April 15, 22026,that discusses expert evaluations conducted in October and December of 2025, and January of 2026 (Doc. 6 at 44, 78), and letters from counsel dated February 2026. (Doc. 6 at 66.) Fuentes apparently retained new counsel in the spring of 2026, but new counsel did not seek relief until months later, and there is no explanation of any changed circumstances necessitating emergency relief. As such, Plaintiff has not

Moreover, Plaintiff fails to show any irreparable harm that entitles him to emergency relief. As previously explained, the records show that he is both effectively communicating with Prairieland staff through the various accommodations they have provided, and effectively communicating with family through his tablet.

**Federal Defendants' Memorandum in Opposition to Plaintiff's Motion for**
**a Temporary Restraining Order of Preliminary Injunction – Page 20**

**D.      Equities and public interest do not weigh in favor of a preliminary injunction.**

As set forth above, the weight of evidence in this case reflects that Fuentes' disability was immediately identified, and Prairieland staff is and has been taking reasonable steps to accommodate Fuentes' disability. He has been provided with tablet with appropriate software, a communication board with pictures, and offered the assistance of interpreters.  There is no evidence that he has been unable to avail himself of medical care, communications with friends or family, or any other programming. As such, equities do not weigh in favor of preliminary relief in this matter.  Moreover, it is well-settled that in the context of detention, courts generally afford deference in determining the appropriate accommodations. *See Wells*, 460 F. App'x at 313.  Absence evidence that Fuentes is actually experiencing the extreme isolation alleged in the complaint, allegations that are wholly belied by the record of him playing soccer, regularly availing himself of sick call and commissary, and having access to both a tablet and communication board, it is not in the public interest to second guess the decisions made in this context.

**E.      Release from detention is not a proper remedy for any alleged violation of the Rehabilitation Act or the APA.**

Finally, Fuentes suggests that if the Federal Defendants cannot agree to provide him with the accommodations he believes he is entitled to receive, this Court should order the Federal Defendants to release him from custody. (Doc. 4 at 16.) Fuentes presents no authority for the proposition that the referenced Detention Standards, which permit ICE to consider whether an inmate should be released if it cannot accommodate a

disability, provides a legal basis for this Court to order the Federal Defendants to release Fuentes. If Fuentes wishes to be released from custody, such relief must be sought through a habeas petition, which he has filed and is pending. He cannot use this conditions of confinement action as an end run around the immigration proceedings.

## IV.    Conclusion

The record reflects that Prairieland staff are reasonably accommodating Fuentes' disability. He is not entitled to the drastic remedy of a TRO or PI in this matter.

Respectfully submitted,

RYAN RAYBOULD
United States Attorney

*/s/ Tami C. Parker*
Tami C. Parker
Assistant United States Attorney
Texas Bar No. 24003946
801 Cherry Street, Suite 1700, Unit #4
Fort Worth, Texas 76102
Telephone: 817-252-5200
Facsimile: 817-252-5458
E-mail: tami.parker@usdoj.gov

*Attorneys for Federal Defendants*

**Federal Defendants' Memorandum in Opposition to Plaintiff's Motion for a Temporary Restraining Order of Preliminary Injunction – Page 22**

## CERTIFICATE OF SERVICE

On <u>July 16, 2026,</u> I electronically submitted the foregoing document with the clerk

of court for the U.S. District Court, Northern District of Texas, using the electronic case

filing system of the court.  I hereby certify that I have served all parties electronically or

by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


<u>/s/ Tami C. Parker</u>
Tami C. Parker
Assistant United States Attorney

**Federal Defendants' Memorandum in Opposition to Plaintiff's Motion for
a Temporary Restraining Order of Preliminary Injunction – Page 23**